UNITED STATES DISTRICT COURT
Southern District of Florida
Miami Division

Case No.:

DISABILITY ADVOCATES AND
COUNSELING GROUP, INC.,

      Plaintiff,

vs.

WALGREEN CO.,
d/b/a Walgreens,

      Defendant.

_____/

## COMPLAINT

Plaintiff, Disability Advocates and Counseling Group, Inc. ("DACG" or "Plaintiff"), hereby

sues Defendant, **WALGREEN COMPANY** ("Defendant"), for declaratory and injunctive relief and

attorneys' fees, litigation expenses and costs pursuant to 42 U.S.C. § 12181, et seq. ("Americans

With Disabilities Act" or "ADA").

## JURISDICTION

1.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§1331 and

1343 for Plaintiff's claims arising under 42 U.S.C. §§12181, et seq., based on Defendant's violations

of Title III of the Americans With Disabilities Act ("ADA")(see also 28 U.S.C. §§2201 and 2202).

## PARTIES

2.      Plaintiff, Disability Advocates and Counseling Group, Inc. is a non-profit corporation

organized and existing under the laws of the State of Florida ("DACG"). DACG's members are

individuals with disabilities as defined by and pursuant to the ADA. DACG has several purposes.

One of those purposes is representing its members to assure that public accommodations and

commercial premises are accessible to and useable by its members presently and in the future, to assure its members that they will not be excluded from participation in or be denied the benefits of the services, programs or activities of public accommodations, and to assure its members that they are not discriminated against because of their disabilities. DACG also assists in and/or provides speakers for disability expositions and disability related seminars. DACG also provides counseling to individuals with disabilities and their families regarding their particular disabilities, information concerning resources, aid and assistance which is available to individuals with disabilities, and discussions and information on difficult and personal subjects affecting the disabled. DACG, through the disability expositions and seminars, also provides community awareness of disability issues, general advocacy for individuals with disabilities, and information on obtaining government grants for the disabled or their benefit. DACG, when funds are available, also makes donations to assist the disabled or on their behalf. DACG and its members have suffered direct and indirect injury as a result of Defendant's actions or inaction described herein, and will continue to suffer injury and discrimination without the relief provided by the ADA as requested herein. DACG has also been discriminated against because of its association with its members and their claims, and because its resources (both time and money) have been impaired and not been able to go to those activities due to the resources expended (both time and money) on this matter in the attempt to end the discrimination by Defendant.

3.    DACG's members have an individual desire to and interest in traveling throughout the community and engaging in daily activities free of barriers to access, as members of the able-bodied community are presently able to do. As such, DACG's members have a personal interest in and seek to enforce compliance with the ADA and to end discrimination against themselves and other persons with disabilities resulting from ADA violations. Furthermore, and independent of their

- 2 -

role as members of DACG, DACG's members also seek enforcement of and compliance with the ADA and to end discrimination against themselves, DACG, DACG's other members and all other persons with disabilities, so that they, DACG's members, and all other persons with disabilities may avail themselves of public accommodations and facilities, services and goods which are available to the able bodied community, without discrimination caused by illegal barriers to access.

4.      Completely independent of their personal desire to have access to public accommodations free of illegal barriers to access, DACG's members also act as "testers" on behalf of DACG, its members and themselves, for the purpose of discovering, encountering and engaging discrimination against the disabled in public accommodations.  When acting as "testers," DACG's members employ a routine practice.  They personally visit the public accommodation where they know or where it has been reported to them that illegal barriers to access exist; they engage all of the illegal barriers to access at the subject premises, or at least all of those they are able to access; and they test all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; they proceed with legal action enjoin such discrimination; and they subsequently return to the premises to verify its / their compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do.  Independent of their other intended subsequent visits, DACG's members also intend to visit the subject premises annually to verify their compliance or non-compliance with the ADA.

5.      In their capacity as "testers," when DACG's members encounter illegal barriers to access, as they did here with respect to Defendant's premises, they engage those barriers to the extent they are able.  Also, to the extent they are able to do so given the existing barriers to access, DACG's members also avail themselves and/or attempt to avail themselves to the subject public accommodations as a whole (including all public areas thereon and all services, goods, facilities and

- 3 -

amenities offered thereat). They do so for the purpose of using those public accommodations and also to establish discrimination against themselves and the disabled due the illegal barriers to access and the resulting denial of access to the property and the services, goods, facilities and amenities offered thereat.

6.    In this instance, DACG's members, in their individual capacity and independently as "testers," personally, and on behalf of DACG and its other members, suffered legal harm and legal injury, and they will continue to suffer such harm and injury as a result of the illegal barriers to access and Defendant's ADA violations addressed herein.

7.    One or more of DACG's members (both individually and as a "tester"), has attempted to access and use all public areas of the subject retail stores and related facilities which are owned, leased and/or operated by Defendant in the past, but has been, and will continue to be, discriminated against and excluded from proper unobstructed access to and use of those facilities due to Defendant's failure to remove illegal barriers to access and comply the ADA as set forth herein. Additionally, Defendant has failed to afford DACG's members the opportunity to participate in and benefit from the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations owned, leased and/or operated by Defendant and/or has relegated DACG's members to receiving different or separate benefits which are not equivalent to those offered by Defendant to able-bodied patrons. DACG's members specifically intend to gain access into and use the retail stores and related facilities owned, leased and/or operated by Defendant in the future, as members of the able-bodied community are presently able to do, but have been and will continue to be denied such access and use as a result of Defendant's failure to remove illegal barriers to access and comply with the ADA as set forth herein, and are at serious risk of suffering further and irreparable injury without the immediate relief requested herein.

- 4 -

8.     Defendant's ADA violations are continuing in nature and will continue indefinitely into the future and, as a result, will continue to prelude access by DACG's members.

9.     Defendant is a Ohio corporation which is authorized to transact business in, and which transacts business throughout, Florida.  Defendant is the owner, lessee and/or operator of the real property and improvements thereon which are the subject of this action, commonly known as **Walgreens** stores, located at:

a.     8327 West Flagler Street, Miami, Florida,

b.     9490 NW 7th Avenue, Miami, Florida,

(jointly referred to herein as the "buildings" or "premises").

## INTRODUCTION

10.     On July 26, 1990, Congress enacted the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§12101, et seq.

11.     Congress found, among other things, that:

i.     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

ii.     historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

iii.     discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

iv.     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs, or other opportunities; and,

- 5 -

v.     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity,

42 U.S.C. §12101(a)(1)-(3), (5) and (9).

12.     Congress explicitly stated that the purpose of the ADA was to:

i.     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

ii.     provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

iii.     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4).

13.     The congressional legislation provided commercial businesses one and a half years from the enactment of the ADA to implement the requirements imposed by the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts of $500,000 or less. 42 U.S.C. §12181; 28 CFR §36.508(a).

14.     The premises which are owned, leased and/or operated by Defendant and which are the subject of this action include retail stores and related facilities. Those retail stores and facilities must be, but are unable to be, accessed by individuals with disabilities, including DACG's members. By failing to make its premises and facilities accessible to individuals with disabilities or otherwise provide equivalent participation in the benefits and services offered therein, Defendant has effectively excluded and otherwise denied DACG's members the benefits of the goods, services, privileges, advantages and/or accommodations offered at the premises and have discriminated against the DACG's members on the basis of their disabilities, and Defendant has denied DACG's

WILLIAM NICHOLAS CHAROUHIS & ASSOCIATES, PA
SUITE 1750 • BRICKELL BAYVIEW CENTRE • EIGHTY SOUTHWEST EIGHTH STREET • MIAMI, FLORIDA 33130 • TEL.: 305.979.8700 • FAX: 305.377.8416

members the opportunity to participate in and derive the equivalent benefits of the goods, services, privileges, advantages or accommodations that are provided by Defendant to able-bodied individuals.

15.     Pursuant to 42 U.S.C. §12181(7); 28 CFR §36.104, the buildings and facilities which are the subject of this action are public accommodations covered by the ADA and which must be in compliance therewith.

16.     Defendant has discriminated against DACG's members by denying them access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the buildings and by otherwise failing to provide for DACG's members' equivalent participation in Defendant's goods, services, facilities, privileges, advantages and/or accommodations, as prohibited by 42 U.S.C. §12182 et seq., and by failing to remove architectural barriers as required by 42 U.S.C. §12182(b)(2)(A)(iv). DACG's members desire to use Defendant's facilities presently and in the future, but are precluded from doing so as a result of Defendant's ADA violations set forth herein.

17.     Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA.  28 CFR Part 36.

18.     Defendant is in violation of 42 U.S.C. §12181 et seq., and 28 CFR 36.302 et seq., and are discriminating against DACG's members by, *inter alia*, failing to:

      i.      provide an accessible path of access from the public sidewalk to the primary entrance to the stores which does not require travel through a vehicular traffic;

      ii.     provide the requisite number of properly located and properly sized, configured, sloped, designated and signed accessible parking spaces and associated access aisles;

- 7 -

iii.    modify ramps / curb-ramps leading to the premises to have accessible slopes and detectable warnings;

iv.    provide an accessible path of access to the stores, with compliant cross-slopes;

v.    provide the requisite clear, level maneuvering clearances at the entry doors;

vi.    provide ADA compliant signage at the entrance into / identifying the retail spaces;

vii.    modify certain customer-use counters to have the requisite lowered, accessible sections;

viii.    provide and maintain accessible maneuvering clearances in, accessible paths of access throughout, and clear floor spaces in, the public areas of the retail spaces;

ix.    modify / remove protruding objects within the public areas of the retail spaces;

x.    provide all items / goods for sale and customer-use controls within the accessible reach parameters;

xi.    modify the Redbox video rental machine to have Braille instructions or otherwise to be independently usable by patrons with visual impairments;

xii.    locate the in-store strobe emergency notification devices at the requisite locations;

xii.    provide strobe emergency notification devices in the restrooms; and,

xiii.    modify the restrooms to be accessible,

by January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

19.    Each of the above-described required ADA alterations / modifications are readily achievable as defined by and pursuant to the ADA

WILLIAM NICHOLAS CHAROUHIS & ASSOCIATES, PA
SUITE 1750 • BRICKELL BAYVIEW CENTRE • EIGHTY SOUTHWEST EIGHTH STREET • MIAMI, FLORIDA 33130 • TEL.: 305.979.8700 • FAX: 305.377.8416

20.     DACG's members have sought and have been, continue to be, and in the future will, be denied access to the benefits of services, programs and activities of the building and its facilities, and have otherwise been discriminated against and damaged by Defendant, because of Defendant's ADA violations set forth above, and will continue to suffer such discrimination, injury and damage without the relief provided by the ADA as requested herein.  The claims asserted herein do not require the participation of each individual member of DACG.

21.     Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to recover those attorneys' fees, costs and litigation expenses from Defendant pursuant to 42 U.S.C. §12205.

22.     Pursuant to 42 U.S.C. §12188, this Court is provided authority to grant Plaintiff injunctive relief including an order requiring Defendant to alter the subject buildings and related facilities to make them accessible to and useable by individuals with disabilities to the extent required by the ADA, and closing the subject facilities until the requisite modifications are completed.

**WHEREFORE**, Plaintiff respectfully requests that the Court find that Defendant has been and continues to be in violation of the ADA and is discriminating against Plaintiff and DACG's members, issue a permanent injunction enjoining Defendant from continuing its discriminatory practices, ordering Defendant to alter the subject premises and related facilities as appropriate to comply with the ADA, closing the subject premises until the requisite modifications are completed, awarding Plaintiff its attorneys' fees, costs and litigation expenses incurred in this action, and retaining jurisdiction to assure Defendant's subsequent compliance with the ADA and to protect against similar subsequent discrimination by Defendant.

- 9 -

Respectfully submitted,

**WILLIAM NICHOLAS CHAROUHIS & ASSOCIATES, PA**
Attorneys for Plaintiff

By: _____

William N. Charouhis, Esquire
Florida Bar No. 510076
Suite 1750 • Brickell Bayview Centre
Eighty Southwest Eighth Street
Miami, Florida 33130
Tel.: 786.279.5707
Fax : 305.377.8416

Dated: _November 3, 2011_

W:\Casefile\IM\ADA\Complaint\Retail Store\Walgreens [7675.1][wnc][110311].wpd

- 10 -